**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Jeffrey Charles Hoagland,<br><br>　　　　Defendant. | No. CR-01-01629-001-TUC-DCB<br><br>**ORDER** |

The Court denies the Amended Motion for Compassionate Release (Doc. 183).

<u>18 U.S.C. § 3582(c)(1)(A): Compassionate Release</u>

To be eligible for compassionate release, the Defendant must demonstrate: (1) the existence of "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A)(i), or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under 3559(c) for certain violent felonies, and a determination has been made by the Director of the Bureau of Prison (BOP) that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g), which are the factors to be considered for release or detention of pending trial, 18 U.S.C. § 3582(c)(1)(A)(ii). "[A]s part of the First Step Act, of 2018, Congress amended § 3582(c)(1)(A) to [] allow a defendant to seek a reduction directly from the court, provided that the defendant first seeks a reduction from the BOP and that request has either been denied or 30 days have passed." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). The Court "may reduce the term of imprisonment (and may impose a term of probation or

supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The Court summarizes the familiar sentencing factors set forth in § 3553, as follows: the nature and circumstances of the offense and criminal history and characteristics of the defendant; the need to: punish the defendant and promote respect for the law, deter criminal conduct, "protect the public from further crimes of the defendant," and provide defendant with needed educational or vocational training, medical care, etc.; the kinds of sentences available and established sentencing guidelines and ranges. 18 U.S.C. § 3553(a).[1]

---

[1] For the sister compassionate release provision, 18 U.S.C. § 3582(c)(2), where a "district court[ ] may adjust sentences imposed pursuant to a range that the [Sentencing] Commission has concluded is too severe, intervening developments in law and sentencing guidelines may be relevant to assessing the § 3553(a) factors given the "underlying principle in federal judicial tradition that 'the punishment should fit the offender and not merely the crime, *Pepper v. United States*, 562 U.S. 476, 487–88 (2011) (citation omitted),'" with judges using "the fullest information possible concerning the defendant's life and characteristics, *id.* at 488 (citation omitted).'" *United States v. Lizarraras-Chacon*, F.4th ___, 2021 WL 4314793 *5 (9th Cir., September 23, 2021). This is consistent with the mandate that a sentencing court consider the "totality of the circumstances." *Id.* (citing *United States v. Dunn*, 728 F.3d 1151, 1159 (9th Cir. 2013).

"In a § 3553(a) factor analysis, such information should include, where applicable, post-sentencing and post-offense rehabilitation." *Lizarraras-Chacon* at *5. "It follows that in a § 3553(a) factor analysis, a district court must similarly use the fullest information possible concerning subsequent developments in the law, such as changes in sentencing guidelines, legislative changes to a mandatory minimum, and changes to a triggering predicate offense to ensure the punishment will 'fit the crime' and critically, to ensure that the sentence imposed is also 'sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; [and] to protect the public.'" *Id.* (quoting *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting § 3553(a) and (a)(2)). Subsequent developments may be relevant to assessing the "nature and circumstances of the offense," the "seriousness of the offense," the needs "to provide just punishment for the offense," and "to afford adequate deterrence to criminal conduct," *id.* (citing § 3553(a)(1), (2)(A)–(B)); "seriousness of the offense" is a broad analysis and logically includes any subsequent reevaluation of sentencing issues reflected in legislation. "Legislative changes or guideline changes do not happen in a vacuum. They represent a societal judgment that it is necessary, from time to time, to reconsider and adjust what is an appropriate sentence consistent with the goals of the criminal justice system." *Lizarraras-Chacon* at *5.

Accordingly, the Court has considered the Defendant's proffered other non-COVID related extraordinary and compelling reasons for compassionate release in the context of considering § 3553(a) factors, and not as "a late-time appeal/habeas." (Response (Doc. 192) at 1.) *See e.g.* (CV 09-13 TUC DCB (Order (Doc. 20) (denying § 2255 petition as untimely); (CV 13-194 TUC DCB (Order (Doc. 3) (denying successive § 2255 petition for lack of appellate certification; noting Ninth Circuit previous determined that neither *Lafler v. Cooper*, 566 U.S. 166 (2012) nor *Missouri v. Frye*, 132 S. Ct. 1399 (2012), can form the basis for second or successive motion "because neither case decided a new rule of constitutional law." *Buenrostro v. United States*, 697 F.3d 1137, 1140 (9th Cir. 2012)), *see*

The Defendant bears the burden of proving he meets all elements of eligibility, both substantive and procedural, for a sentence reduction. *Id.*; *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("defendant, as the § 3582(c)(2) movant, bears the burden of establishing" eligibility for sentencing reduction); *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

The statute requires that any reduction be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Court looks to U.S.S.G. § 1B1.13 for examples of "extraordinary and compelling reasons" that may make a defendant eligible for compassionate release, which include (1) a "terminal illness"; (2) a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he [] is not expected to recover"; or (3) a defendant who is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, n.1 (other grounds omitted).

In *Aruda,* the Ninth Circuit joined five circuits that have unanimously held that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director and does not apply to § 3582(c)(1)(A) motions filed by a defendant. *Aruda*, 993 F.3d at 801 (citing *United States v. McGee*, No. 20-5047, 992 F.3d 1035, 1050–51 (10th Cir. Mar. 29, 2021); *United States v. McCoy*, 981 F.3d 271, 281–84 (4th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 234–37 (2d Cir. 2020). Accordingly, "[t]here is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered ... to consider any

---

*also In re Lampton*, 667 F.3d 585, 590 (5th Cir. 2012) (successive petition reliance on *O'Brien* fails because *O'Brien* is a statutory-interpretation case about the elements of an offense and successive filing allowed only when the Supreme Court announces a new rule of constitutional law).

extraordinary and compelling reason for release that a defendant might raise.'" *Id*. (citing *McCoy*, 981 F.3d at 284 (quoting *Brooker*, 976 F.3d at 230)).

In short, "the current version of U.S.S.G. § 1B1.13 is not an "applicable policy statement[ ]" for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *Id*. at 802. "The Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id*. (citing *Gunn*, 980 F.3d at 1180). The closest relevant policy statement, here, is the compassionate release provision where there is a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he [] is not expected to recover."

<u>Amended Motion for Compassionate Release (Doc. 183)</u>

The Defendant seeks compassionate release due to medical conditions that make him high risk for serious COVID-19 complications, including death, in combination with other case-specific reasons which he asserts create extraordinary and compelling reasons to warrant relief under 18 U.S.C. § 3582(c)(1)(A).

Defendant has hypertension and hyperlipidemia, and liver damage from chronic hepatitis C. He is 57 years old. Considering the extraordinary and compelling reasons for release that the Defendant has raised, singularly and in combination, the Court must determine whether he has a serious medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility because, if he contracted COVID-19, he is not expected to recover. In other words, the Court must determine whether his liver damage from chronic hepatitis C, hypertension and hyerlipidemia, together with his age, are extraordinary and compelling reasons warranting immediate release.

Generalized and speculative concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence. This Court follows the third circuit's guidance in *United States v. Raia,* 954 F.3d at 597, which explained that the courts should not minimize the risks that COVID-19 poses in the federal

prison system, particularly to inmates with high-risk COVID-19 medical conditions, but "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and profession efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597; *see also, e.g., United States v. Ebherhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence…."). In other words, a prisoner, who has CDC-identified risk factors for COVID-19 does not automatically warrant compassionate release. This is true even for defendants housed at facilities with confirmed COVID-19 cases. *See United States v. Korn*, 2020 WL 1808213, at *6-8 (W.D.N.Y. Apr. 9, 2020) (denying compassionate release notwithstanding at least 40 COVID-19 confirmed cases and defendant had serious heart condition that made him more susceptible to COVID-19); *Riley v. United States*, 2020 WL 1819838 (W.D. Wash. Apr. 10, 2020) (denying compassionate release to inmate with HIV-AIDS and prostate cancer also housed at FMC Butner).

      Here, the Court looks to the BOP's determinations denying the Defendant's administrative request for compassionate release. The administrative review process plays a crucial role because for each compassionate release request, BOP carefully considers the inmate's medical condition and correctional concerns, including the inmates disciplinary record and recidivism risk, and also his plan for release, among other things. See BOP Program Statement 5050.50 (January 17, 2019), Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g). Again, the Court turns to the Third Circuit and *Raia* for guidance, and its conclusion to strictly adhere to exhaustion requirements: "Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical— importance." *Raia*, 954 F.3d at 597. Exhaustion is a procedural requirement, with substantive importance. The Court being informed by the administrative record, notes that BOP, after a comprehensive review,

reached a logical and well-reasoned determination that the Defendant did not qualify for compassionate release.

He was denied compassionate release due to correctional concerns that he was a high recidivist risk, had a history of violence and his disciplinary record was not stellar. Defendant offers no evidence to the contrary. These factors weigh against release given his generalized and speculative concerns about possible exposure to COVID-19. The Court finds that the BOP was in the best position to verify the Defendant's medical claims when it determined he did not have any serious medical condition that substantially diminished his ability to provide self-care within the prison environment when it issued the decision on October 1, 2020.

The Court agrees with the Government, "that, considering the increased risk of serious illness from COVID-19, the defendant's liver damage due to Hepatitis C may usually present an extraordinary and compelling reason earlier in the pandemic allowing compassionate release." (Response (Doc. 192) at 1-2.) With the advent of the COVID-19 vaccine, which has been administered to the Defendant, and the COVID-19 policies, procedures, and practices implemented by the Bureau of Prisons (BOP), his liver condition, hypertension, hyperlipdermia, and age, combined, do not present an extraordinary and compelling reason justifying compassionate release. *Id.* at 2-4, 8-10.

The Defendant replies, perhaps, but his medical condition in combination with the inequity of the sentence he is serving, together create extraordinary and compelling reasons for this Court to grant the Amended Motion for Compassionate Release. The Court considers whether his medical conditions and other asserted reasons, in combination, are extraordinary and compelling to warrant compassionate release.

This Court sentenced the Defendant on March 8, 2004, to 45 months (3.75 years) imprisonment for bank robbery to run concurrently with undischarged sentences from three state cases, and 360 months (30 years) for using a firearm (a hand grenade) during the bank robbery.  The Court also imposed terms of supervised release. The Defendant has served

the majority of his sentence, with approximately 13 years left on the more than 33-year term of imprisonment, with a tentative release date of April 23, 2033.

As extraordinary and compelling reasons, the Defendant asks the Court to consider the inequity of his prison sentence in light of a plea agreement which offered a substantially reduced sentencing range of 10 to 17.5 years. He asserts, with supporting evidence, that his trial attorney told him that he would be facing 24 to 28 years if he went to trial and could receive a year off the sentence by completing a BOP program RDAP. She failed to tell him that there was a 30-year mandatory minimum sentence for the use of a firearm, destructive device, which would be consecutive to whatever sentence he received on the bank robbery count. He accepted the plea offer but then withdrew from it, proceeded to trial, and was convicted on all counts. He asserts that due to ineffective assistance of counsel, he is being inordinately punished with the 33-year prison term.

He also argues that his conviction for violating 18 U.S.C. § 924(c) using a firearm,[2] specifically a destructive device (a hand grenade), during a crime of violence, was treated as a sentencing enhancement in his case and was not determined by the jury as an element of the offense. (Amended Motion (Doc. 183) at 2 (citing *United States v. O'Brien,* 560 U.S. 218 (2010)) ("what sort of deadly weapon" was used or carried is not sentencing enhancement, rather an element of the offense). Therefore, he challenges the appropriateness of the 30-year sentence for the firearm conviction based on the firearm being a destructive device, specifically a grenade. 18 U.S.C. 924(c)(1)(B)(ii).

The Court does not revisit these arguments, which have previously been raised as habeas claims by the Defendant and denied by this Court, except to the extent they are relevant to assess the § 3553 factors, applicable to determining whether to grant the Amended Motion for Compassionate relief.

---

[2] The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm. 18 U.S.C.A. § 921(a)(3).

At the time this Court initially sentenced the Defendant, the firearm enhancement for using a destructive device was treated like a sentencing enhancement to be decided by the Court.[3] It has since been determined that the "sort of deadly weapon," i.e., the type of firearm, used or carried is an element of the offense which must be submitted to and decided by the jury. (Amended Motion (Doc. 183) at 2 (citing *United States v. O'Brien*, 560 U.S. 218 (2010)). In this case, however, the question as to the sort of deadly weapon used by the Defendant was decided by the jury. By definition, a grenade is a destructive device. 18 U.S.C. § 921(a)(4)(A)(ii). On direct appeal, the court held the evidence was sufficient to support the conviction on Count 2 because a reasonable person could find he used an "operable" grenade based on testimony by the teller that he threatened her with a grenade, and she described it. A reasonable juror could infer the grenade was designed for use as a weapon because Defendant used it as such. (Mandate/Decision (Doc. 141) at 3.)

In *United States v. Woodberry*, 987 F.3d 1231, 1236 (9th Cir. 2021), cert. denied, No. 21-5503, 2021 WL 4733543 (U.S. Oct. 12, 2021), the Ninth Circuit considered as a matter of first impression whether the firearm enhancement for use of a short-barreled rifle or shotgun requires proof that the defendant knew that the rifle or shotgun was a short-barreled rifle or shotgun. It rejected the notion of such a *mens rea*, but first before reaching this issue, the court addressed what it described as a matter requiring clarification, which was that the "short-barrel" provision in § 924(c)(1)(B)(i) was not a sentencing "enhancement," rather than an element. The court relied on *Alleyne v. United States*, 570 U.S. 99, 103 (2013), where the Court held that "[a]ny fact that, by law, increase[s] the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a

---

[3] (CV 09-13-TUC DCB (Response Re: Substantive (Doc. 18) at 7 n.1) (describing split in circuits, with 4th, 7th, 8th, 10th, 11th, and D.C. Circuits having held that Section 924(c)(1)(B) sets forth sentencing factors that increase the minimum sentence for the crime specified in Section 924(c)(1)(A), rather than the elements of a distinct criminal offense, and that the firearm's characteristics therefore need not be found by a jury (citations omitted), *compared with* 1st Circuit, holding pending before the Supreme Court, *United States v. O'Brien*, 542 F.3d 92 1 (1st Cir. 2008), and the 6th Circuit, *United States v. Harris*, 397 F.3d 404,413-14 (6th Cir. 2005) (having held that the firearm characteristics in 18 U.S.C. § 924(c)(1)(B) are elements of an aggravated offense that must be charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt).

- 8 -

reasonable doubt."[4] Like the short-barrel shotgun provision, the destructive device provision, requires an increase in a defendant's minimum sentence. 18 U.S.C. § 924(c)(1)(B)(i) and (ii). Both must be proven to a jury beyond a reasonable doubt. This Court follows *Woodberry*, including its explanation that the "distinction is somewhat semantic" because in *Woodberry,* the district court properly put to the jury the question of whether the barrel of Johnson's rifle was less than sixteen inches in length. In Defendant's case, the jury answered the question of whether the destructive device was an operable grenade, necessarily finding he used a grenade.

Using the fullest information possible concerning subsequent developments in the law, including the change in statutory-interpretation that the sort of deadly weapon is an element of the offense for using a destructive device, does not change the Court's analysis that the 33+ year prison sentence imposed originally fits the crime, of bank robbery using a grenade to threaten the teller. The Court finds the sentence imposed was sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; [and] to protect the public.

The Court concludes that for the purpose of assessing the "nature and circumstances of the offense" and the "seriousness of the offense," nothing has changed. The Defendant robbed several banks using and threatening victims with a hand grenade. The punishment imposed at the time this Court sentenced him fits this crime. The disparity between it and the sentencing range offered in the plea agreement is explained because the plea agreement provided for dismissal of Count 2, use of a destructive device, with Defendant agreeing to plead guilty to Court 1 of the indictment, the bank robbery count. (CV 09-13 TUC DCB (Response Re: Merits (Doc. 18) at 2.)

### Conclusion

The Court finds that the Defendants' medical conditions, singularly and in combination, are not extraordinary and compelling reasons for compassionate release due to COVID-19. Neither is there any extraordinary and compelling reason for compassionate

---

[4] *Woodberry*, 987 F.3d at 1236 n.3 (describing *Alleyne* as rendering multi-factor analysis in O'Brien obsolete and applying categorical rule).

release based on medical risks related to COVID in combination with his other reasons, including the changed interpretation of 924(c)(1)(B)(ii) that it is an element of the offense and/or any ineffectiveness of his trial counsel.

**Accordingly,**

**IT IS ORDERED** that the Amended Motion for Compassionate Release (Doc. 183) is DENIED.

Dated this 25th day of October, 2021

David C. Bury
United States District Judge